# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

VIRON d/b/a AMERICAN INN,

    *Plaintiff,*

vs.

SCOTTSDALE INSURANCE COMPANY and BHAKTA GARCIA & ASSOCIATES, LLC,

    *Defendants.*

Case No. 6:21-cv-01283-EFM-TJJ

## MEMORANDUM AND ORDER

Before the Court is Defendant Scottsdale Insurance Co. ("Scottsdale")'s Motion for Summary Judgment regarding Plaintiff Viron d/b/a/ American Inn ("Viron")'s claim for breach of contract. Because Viron fails to cite to any evidence in its favor which would create a genuine issue of material fact, the Court grants Scottsdale's Motion.

### I.    Factual and Procedural Background[1]

Scottsdale is an insurance company that acts largely through its authorized agent, AmWINS Access Insurance Services, LLC ("AmWINS"). Viron conducts business as American

---

[1] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party, Viron. The facts, where controverted, are noted as such.

Inn, owning property at 1336 E. 1st St., Pratt, Kansas 67124 (the "Property"). At some point before the key events in the case took place, Viron hired Bhakta Garcia & Associates, LLC ("BGA") to obtain property insurance for it. The parties agreed that BGA would choose the insurance company and that BGA would pay the policy premiums on Viron's behalf. On July 10, 2019, BGA executed a Policy with either Scottsdale or AmWINS to insure the Property. Viron was to make premium payments to BGA, which was then was to forward those payments to AmWINS.

The Policy contained the following provision concerning its cancellation:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least: a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

On or about July 30, 2019, AmWINS emailed BGA a "Past Due Notice" for failure to pay premiums amounting to of $9,549.15. BGA did not pay the premiums. On August 11, 2019, AmWINS sent BGA a "Notice of Intent to Cancel" due to the unpaid premium. The notice stated

that the balance "must be received within 10 calendar days in order to prevent the issuance of the Notice of Cancellation for non-payment of premium." On August 26, 2019, AmWINS mailed a Notice of Cancellation to Viron, informing Viron that the Policy would terminate on September 10, 2019, due to non-payment of premiums. Viron received that notice. On September 1, 2019, a a BGA representative informed Viron via text messages that the premiums had been paid and the Policy was still in effect.

On September 24, 2019, a hailstorm damaged the Property. Scottsdale disclaimed coverage because the Policy had terminated two weeks prior. Thereafter, Viron brought this suit against both Scottsdale and BGA on a variety of counts. Through this litigation process, all claims against Scottsdale have been eliminated except Viron's claim for breach of contract. Scottsdale has now moved for summary judgment on this claim.

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[5] These facts

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[5] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

### III.     Analysis

**A.     Breach of contract**

The primary issue before the Court is whether Scottsdale violated its contract with Viron by not providing insurance coverage for hail damage inflicted to Viron's property on September 24, 2019. To prevail on a breach of contract claim under Kansas law, the plaintiff must prove: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."[8] Here, the parties' sole dispute is whether a contract existed between Viron and Scottsdale on September 24, 2019, the date Viron's property was damaged by the hail storm.

The parties do not dispute that AmWINS, acting as Scottsdale's agent, gave Viron notice of the policy cancellation on September 10, 2019. Furthermore, the parties do not dispute that Scottsdale did not receive the premium payments owed by Viron under the policy. In other words, there is no real dispute that Scottsdale was justified in canceling the policy due to lack of premium payments. Therefore, the inquiry becomes whether Scottsdale effectively canceled the contract under Kansas law when AmWINS mailed notice of cancellation to Viron.

---

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[8] *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013).

When an insurer follows the procedures outlined in the relevant insurance policy, all that Kansas law requires for the insurer to terminate that policy is that the insurer "mail the notices to the [insured]'s address."[9]  "[R]eceipt of the notice is immaterial under Kansas law."[10]  Viron does dispute that Scottsdale completely complied with the terms of the Policy.  Nor does it dispute that AnWINS, acting as Scottdale's authorized agent, mailed the requisite Notice of Cancellation to its address.

Instead, Viron spends much time and energy arguing that BGA was in fact Scottsdale's agent.  However, Viron does not at any point address how this agency relationship, if it existed, would prevent Scottsdale from properly canceling the Policy by following the procedures outlined in the Policy.  Viron's only argument is that BGA acted on behalf of Scottsdale by texting Viron that the Policy was still in effect.  Viron does not clarify how that would affect the Policy's cancellation.  This argument, however, could be construed that BGA's representations meant Viron did not have actual notice that the Policy was canceled.  However, Kansas law does not require actual notice for cancellation to be valid, only that the insurer act in accordance with the insurance contract and mail notice to the insured's address.  Scottsdale, acting through AmWINS, did so.  Therefore, anything that BGA might have told Viron is immaterial to whether Scottsdale effectively canceled the Policy.

Viron's argument also fails because it fails to present any evidence of the alleged agency relationship between BGA and Scottsdale.  Kansas law recognizes both actual and apparent

---

[9] *Arnold v. Foremost Ins. Co. Grand Rapids, Mich.*, 52 Kan. App. 2d 833, 379 P.3d 391, 396 (2016).

[10] *Nationwide Mut. Ins. Co. v. Briggs*, 2012 WL 928088, at *4 (D. Kan. 2012), *aff'd*, 555 F. App'x 799 (10th Cir. 2014)

-6-

agents.[11]  "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."[12]  Critical to the determination of whether an agency relationship exists in an insurance context are "intentions of the insurer and intermediary in creating an agency relationship and the authority the insurer vests with the intermediary."[13]  "In contrast, 'apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and *that belief is traceable to the principal's manifestations*.' "[14]  Here, what matters is not the principal's manifestations to its agent but rather its manifestations to the party claiming apparent agency.[15]

Relying heavily on *Golden Rule Ins. Co. v. Tomlinson*,[16] Viron argues that BGA is in fact both an actual and apparent agent of Scottsdale.  First, Viron asserts that "there is little doubt that Defendant Scottsdale allowed Defendant BGA to both obtain and submit applications to them, which on its own is enough to establish express authority."  Little doubt is one thing; actual evidence is another.  Viron cites to no evidence establishing that Scottsdale authorized BGA to "solicit and submit applications directly to" Scottsdale.[17]  The uncontroverted facts establish that BGA worked *on behalf of Viron* to obtain insurance, not that BGA was authorized to solicit on

---

[11] *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 335 P.3d 1178, 1188 (2014).

[12] *Id.* (quoting Restatement (Third) of Agency § 2.01 (2005)).

[13] *Id.* at 1190.

[14] *Id.* at 1188 (quoting Restatement (Third) of Agency § 2.03 (2005)) (alternations omitted) (emphasis added).

[15] *See id.*

[16] 300 Kan. 944, 335 P.3d 1178 (2014).

[17] *Id.* at 1195.

Scottsdale's behalf. Under Viron's reasoning, applying for insurance is all that is required to become an agent of that insurance company. This result is without support in Kansas law.

In any case, *Golden Rule* itself supports finding on the uncontroverted facts before the Court that BGA was not Scottsdale's agent. Viron pulls nine factors out of *Golden Rule*'s analysis it claims to be relevant to whether an insurance broker was in fact an agent of the insurance company.[18] In fact, there is no evidence in Viron's favor on any of the factors it lists as relevant to the agency relationship question. Viron's invitation to this Court to conduct an in-depth factual analysis of the factors outlined in *Golden Rule*, an analysis Viron itself refuses to perform, is politely declined. Viron has not cited to any evidence from which a reasonable jury could conclude that BGA acted with actual authority as Scottsdale's agent.

Neither did BGA have apparent authority to act on behalf of Scottsdale. Once again, Viron presents no evidence of any manifestations made by Scottsdale to Viron that could reasonably lead it to believe that BGA was Scottsdale's agent. In fact, Viron admits it had no contact with Scottsdale throughout its transactions. Besides, Viron admits to receiving the Notice of Cancellation from AmWINS, an entity which is undisputedly Scottsdale's authorized agent. That notice followed the Policy's procedures for cancellation of the insurance agreement to the letter. This alone should have been enough to disperse any impression Viron may have had that BGA was acting under Scottsdale's authority. Therefore, any remaining belief that BGA had authority

---

[18] *See id.* at 1193 (examining, as described in Viron's Response, "1) whether the intermediary was allowed to transact business for the insurer; 2) did the intermediary initiate contact with the insured; 3) were the intermediary and insured acquainted prior to contact; 4) whether the intermediary needed permission to submit application for insurance; 5) whether the application was submitted directly to insured; 6) whether the insurer provided a portal for the intermediary; 7) whether the intermediary was the only contact throughout the process; 8) whether the insured believed that the intermediary represented the insurer; and, 9) whether the commission paid to the intermediary was paid from a portion of the premiums or after the sale of the policy.")

as Scottsdale's agent was unreasonable. Under an apparent authority analysis, BGA's representations of its own authority are immaterial. Accordingly, BGA did not act with apparent authority on Scottsdale's behalf.

In arguing against Scottsdale's Motion, Viron suggests it "has plead [sic] significant facts necessary to prove that the agency question present in this case cannot be determined via summary judgment motion." It argues, therefore, that "the issue of agency should be left to a jury to decide based *on the present facts alleged and any additional facts uncovered during the continued litigation process*." From these statements, Viron appears to misunderstand the procedural posture of this case. Scottsdale has not brought a motion to dismiss where sufficiently pled facts would enable Viron's claim to go forward. Instead, Scottsdale has moved for summary judgment. Pled facts here are not enough. Only evidence suffices to create a genuine issue of material fact at summary judgment. Furthermore, Viron's contention that continued litigation will uncover more facts is indefensible. Even if Viron had not already had a year to conduct discovery in this case, the deadline to conduct discovery has expired, and Viron has not moved for additional time. Therefore, Viron's opportunity in this litigation to procure actual evidence, if it ever existed, of BGA's agency relationship with Scottsdale has passed.

As stated above, such evidence would not alter the outcome of this case. There is no genuine dispute of material fact that, under Kansas law, Scottsdale properly terminated its contract with Viron prior to September 24, 2019. Therefore, Scottsdale did not breach its contract by failing to pay Viron for hail damage it sustained on that date. Accordingly, Viron's breach of contract claim must fail.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 30) is **GRANTED.** Defendant Scottsdale Insurance Company is terminated from the case.

**IT IS SO ORDERED.**

Dated this 19th day of October, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE