IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VIRON d/b/a AMERICAN INN,

    *Plaintiff,*

vs.

SCOTTSDALE INSURANCE CO. and
BHAKTA GARCIA & ASSOCIATES, LLC,

    *Defendants.*

Case No. 21-CV-1283-EFM

**MEMORANDUM AND ORDER**

Plaintiff Viron d/b/a American Inn obtained a default judgment against Defendant Bhakta Garcia & Associates ("BGA") on its claims arising out of BGA's failure to pay insurance premiums on Plaintiff's behalf. The Court held a hearing to set the amount of the judgment. After considering the evidence in the record, the Court enters judgment in favor of Plaintiff against BGA in the amount of $244,694.53 and post judgment interest at a rate of 4.66% per annum.

## I. Factual and Procedural Background[1]

Plaintiff owns and operates the American Inn in Pratt County, Kansas. At some point, Plaintiff contracted, either orally or by implication, with BGA to procure and maintain an insurance policy on its commercial property. BGA did so. Coverage was provided through a policy with Scottsdale Insurance. The policy covered, among other things, damage to the commercial building from hail and wind. The deductible on Plaintiff's policy was $10,000.

Each month, BGA debited the premium payment from Plaintiff's account through IPFS, which Plaintiff describes as something akin to an automated clearing house for insurance brokers. BGA was supposed to pass these premium payments on to the insurer. But it never did. From July 2019 to February 2020, Plaintiff paid BGA $7,702.53 in premium payments—none of which were passed on to Scottsdale Insurance.

Plaintiff's policy with Scottsdale was cancelled September 10, 2019. Prior to cancellation, Plaintiff had paid $3,918.23 in premium payments. A notice of cancellation was sent to BGA. Nutan Bhakta, the principal of Plaintiff, states that he did not receive notice of the cancellation of his policy at that time, either from Scottsdale or BGA. Two weeks later, Plaintiff's property was damaged in a hailstorm. The cost to repair the damage was estimated to be $250,910.23.

On January 3, 2020, Scottsdale informed Plaintiff that it would not cover the damage because the policy had been cancelled for nonpayment of premiums prior to the date of loss. Plaintiff reached out to BGA to inquire about this letter. Ana Pena, a commercial servicing manager at BGA, responded by informing Plaintiff that "Scottsdale had sent cancellation notice

---

[1] After default, "[t]he well-pleaded factual allegations of the plaintiff's complaint are taken as true, except those allegations relating to the amount of damages." *DeMarsh v. Tornado Innovations, L.P.*, 2009 WL 3720180, at *2 (D. Kan. 2009).

back in October. But it was resolved they still want to cancel you so Amit is trying to reshop you and move your money to new company once we get it." Apparently, this plan never came to fruition, because Plaintiff reached out again to complain that BGA cheated him. He stated "I know you have to refund but what about my roof money?" Amit Bhakta, no relation to the principal of Plaintiff, responded that he would calculate how much BGA owed Plaintiff and send him a check. Plaintiff never received a refund for the premium payments that BGA failed to apply to Plaintiff's policy with Scottsdale.

Plaintiff sued BGA and Scottsdale in the District Court of Pratt County, Kansas on September 23, 2021. Plaintiff brought claims of breach of contract, breach of fiduciary duty, negligence, and misrepresentation. Service was made upon Scottsdale via the Kansas Commissioner of Insurance on November 1, 2020. On December 1, 2020, Scottsdale removed the action to this Court. The Court granted summary judgment to Scottsdale on October 19, 2022.

After several unsuccessful attempts, BGA was finally served on August 16, 2022. Under the Federal Rules, BGA's answer was due on or before September 7, 2022. No answer was made, and no other responsive pleading was filed. At the time of this order, BGA has filed nothing with this Court. Nor has BGA or its representative ever been in contact with this Court.

Plaintiff applied for a Clerk's Entry of Default on February 6, 2023. The Clerk of the Court entered default as to BGA one week later. On Plaintiff's motion, the Court entered an order of default judgment. The Court noted that it would set a hearing to set the amount of the judgment.

The Court held the hearing on April 14, 2023, during which the Court heard testimony from Nutan Bhakta and received evidence. Plaintiff and its counsel appeared in person. Neither BGA nor its representative appeared.

## II. Legal Standard

Once a clerk's entry of default has been entered against a party, two avenues exist for obtaining a default judgment.[2] First, "if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and that sum is supported by affidavit, "the clerk must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."[3] Second, in "all other cases," the party must apply to the court for a default judgment.[4] The Court may conduct a hearing "when, to enter or effectuate a judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."[5]

While the well-pleaded factual allegations of the plaintiff's complaint are taken as true in the case of a default,[6] "[a] default judgment does not establish the amount of damages."[7] The burden is on Plaintiff to establish that the requested amount is reasonable under the circumstances.[8] "Damages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts."[9]

---

[2] *See generally* Fed. R. Civ. P. 55.

[3] Fed. R. Civ. P. 55(b)(1).

[4] Fed. R. Civ. P. 55(b)(2).

[5] *Id.*

[6] *DeMarsh*, 2009 WL 3720180, at *2.

[7] *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016).

[8] *Id.*

[9] *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

### III. Analysis

At the hearing, Plaintiff presented evidence of its damages through the testimony of its principal, Nutan Bhakta, as well as documentary evidence concerning the estimate to repair the hail damage and Plaintiff's payment of premiums to BGA.

On the evidence before it, the Court concludes that a default judgment in the amount of $244,694.53 should be entered in favor of Plaintiff and against BGA. The first element of this damage calculation is the $250,910.23 estimated cost of to repair the commercial building due to the hail and wind damage. "The basic principle of contract damages is to make a party whole by putting it in as good a position as the party would have been had the contract been performed."[10]

Had BGA fully performed on its obligation to Plaintiff, Plaintiff's policy would not have been cancelled for nonpayment of premiums. And had Plaintiff's policy been in effect at the time of the hailstorm, it would have covered the damage to the commercial property. Plaintiff's make-whole damages thus include cost to repair the building, which became an uncovered loss as a consequence of BGA's failure to uphold its obligation.[11] These damages arise from the breach. And it may be reasonably assumed the parties contemplated that the failure of BGA to pay premium payments on behalf of Plaintiff could lead to cancellation of the policy for nonpayment and a noncovered loss. This amount is properly included in Plaintiff's damages.

The second element of Plaintiff's damages are the premium payments that BGA wrongfully withheld. But the Court disagrees with Plaintiff's contention that this number includes

---

[10] *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 107 P.3d 1219, 1228 (2005).

[11] *See Neighbors Const. Co. v. Woodland Park at Soldier Creek*, LLC, 48 Kan. App. 2d 33, 55, 284 P.3d 1057, 1073 (2012) (defining consequential damages as "damages that arise from the breach itself, or damages that "may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach.").

the entirety of the premium payments Plaintiff made to BGA.  Plaintiff is correct that it is due the premium payments Plaintiff provided to BGA *after* the date the policy was cancelled.  Though Plaintiff did not yet know the policy was cancelled, BGA's emails confirm that it accepted these funds with the intention of shopping Plaintiff around to find a new insurance policy.  But it never did.  The return of these funds—which the Court calculates to be $3,784.30—is warranted under an implied contract theory to prevent unjust enrichment.[12]

But the return of the premiums paid *before* cancellation is not warranted.  Had BGA fully performed on the contract, Plaintiff would be in a position where it had timely paid its premiums and received coverage for the roof damage due to the hailstorm.  It would *not* be in a position where the premiums already paid and applied to its policy were owed back to it.  The refund of $3,918.23 in premium payments paid before the cancellation of Plaintiff's policy is therefore not appropriate or necessary to make Plaintiff whole.

Finally, the Court determines that Plaintiff's damages should be reduced by the amount of the deductible on the policy.  Even if the coverage had been in effect, Plaintiff would have been required to pay up to the deductible amount—here, $10,000—before Scottsdale would have issued coverage under the policy.  Therefore, Plaintiff's damages are properly reduced by this amount.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgment, Doc. 44, is GRANTED and default judgment will be entered in favor of Plaintiff and against Defendant Bhakta Garcia & Associates in the amount of $244,694.53 and post judgment interest at the rate of 4.66% per annum.

---

[12] *Mai v. Youtsey*, 231 Kan. 419, 646 P.2d 475, 479 (1982) ("A contract implied in law, or quasi contract, exists regardless of assent. It is a fiction of the law designed to prevent unjust enrichment."); *see also Hurtig v. Mattox*, 408 P.3d 492 (Kan. Ct. App. 2017) (elements of unjust enrichment under Kansas law).

**IT IS SO ORDERED.**

Dated this 19th day of April, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE